IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION

In re: STEPHANIE M. RONEY,        )
      xxxx-xx-4632        )        CASE # 14-81790-CRJ-13
              )
      Debtor        )

## OBJECTION OF CITY OF HUNTSVILLE, ALABAMA
## TO DEBTOR'S MOTION TO REOPEN

COMES NOW the City of Huntsville, Alabama ("the City"), and objects to the motion of Debtor Stephanie Roney to reopen this action. (Doc. 74). It is clear that in filing her motion, Roney's sole objective is to force this Court to intrude on the jurisdiction of the United States District Court for the Northern District of Alabama in a separate civil lawsuit that Roney has brought against the City—a lawsuit that Roney improperly failed to disclose to this Court before her Plan was completed. Such gamesmanship does not present appropriate grounds for reopening this closed Chapter 13 proceeding. See, e.g., In re Lott, 277 B.R. 871, 873-74 (Bankr. S.D. Ga. 2001). Morever, since Roney's 60-month Plan has been completed for some time now, a reopening of these proceedings would not only be futile, but would be beyond the Court's authority. See, e.g., In re Leahy, 2017 WL 4286136, at *2 (Bankr. D.N.J. Sept. 26, 2017). For these reasons, the City respectfully requests that Roney's motion to reopen be denied.

## I. Background

The City is presently a defendant to a Civil Lawsuit filed by Roney in September 2018. See <u>Roney v. City of Huntsville</u>, 5:18-cv-1482-CLS, Complaint (Doc. 1) (N.D. Ala. Sept. 11, 2018); see also <u>Roney</u>, Amended Complaint (Doc. 27) (N.D. Ala. Dec. 20, 2018), attached hereto as Exhibit A. In her Civil Lawsuit, Roney brings employment claims that purportedly arise from alleged conduct by the City and its employees from **November 2016** through **January 2017**. See Exh. A at 6-9. (Indeed, Roney appears to premise some aspect of her claims on conduct dating back to *2005*. See <u>id</u>. at 3-6.) Roney further alleges that she filed an EEOC Charge of Discrimination concerning this conduct on **March 27, 2017**. See <u>id</u>. at 9. The EEOC issued a no-cause determination on **June 13, 2018**, and Roney subsequently filed the Civil Lawsuit on **September 11, 2018**.

Importantly, *all* of these events—the City's alleged conduct, as well as the filing of the Civil Lawsuit concerning that conduct—occurred while Roney's Chapter 13 proceeding was active before this Court. Roney initiated this proceeding by submitting a Chapter 13 Petition and a 60-month Plan on **June 27, 2014**. (Docs. 1 & 2). This Plan, as modified, was confirmed on September 4, 2014. (Doc. 19). The Trustee certified completion of the 60-month Plan on **July 9, 2019** (Doc. 64), and the

2

Court granted a discharge to Roney ten days later (Doc. 70). The Court discharged the Trustee and closed this action on September 30, 2019.

Roney's Petition, made under oath, purports to list *all assets* in the bankruptcy estate during the pendency of her Chapter 13 proceeding. (See Doc. 1). However, Roney's civil claims, which arose from alleged conduct occurring before her Plan was completed, indisputably qualified as an asset of her bankruptcy estate. See Robinson v. Tyson Foods, Inc., 595 F.3d 1269, 1274 (11th Cir. 2011). Therefore, while this proceeding was active, Roney had an *ongoing duty* to disclose the existence of her civil claims to this Court, to the Trustee, and to her creditors. See id.

Nonetheless, even though Roney's Civil Lawsuit arose from conduct allegedly occurring before her Plan was completed, and even though Roney *actually filed* the Civil Lawsuit before the Plan was completed, Roney never disclosed the existence of any civil claims to this Court. In fact, even though Roney's Plan was modified **nine times** over the course of her 60-month Chapter 13 period—including at least twice since November 2016, the date of the alleged conduct forming the basis of her Civil Lawsuit—Roney never sought to disclose her civil claims in her amended Plan before it was completed. (See Docs. 22, 26, 29, 34, 40, 49, 52, 57, 60).

By failing to disclose her civil claims until after her Plan was completed, Roney deprived the Trustee of the opportunity to consider the value of her claims in

3

calculating a proper payment schedule under the Plan, and therefore deprived her creditors of any benefit that may have accrued to them as a result of the inclusion of this asset in her estate. In other words, Roney obtained an advantage in these proceedings by failing to timely disclose her civil claims as required by law. Because Roney pursued her Civil Lawsuit against the City while simultaneously maintaining to this Court, *under oath*, that no such claims existed, her civil claims are due to be judicially estopped. See, e.g., <u>Slater v. U.S. Steel Corp.</u>, 871 F.3d 1174, 1181 (11th Cir. 2017) ("[A] party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory.").

In this context, the timing of Roney's belated efforts to disclose her civil claims is telling. Roney revealed the existence of this Chapter 13 proceeding to the City for the first time when she submitted her sworn interrogatory responses, including a response to a direct question as to whether she had been a party to any recent bankruptcy actions, on *November 13, 2019*. See Excerpts from Plaintiff's Responses to City's Interrogatories, attached hereto as Exhibit B.[1] Roney then filed the pending Motion to Reopen this case the very next day, on *November 14, 2019*. (Doc. 74). This

---

[1]The City propounded these interrogatories on Roney on September 18, 2019, while this Chapter 13 proceeding remained open. In other words, nothing prevented Roney from disclosing her civil claims to the Court *before this action was closed*.

timing—disclosing claims to the Court *after* her Plan was completed, *after* this case was closed, and only *after* the City directly asked her to provide sworn information about any bankruptcy proceedings—suggests that Roney is not seeking to reopen this case so that a previously undisclosed asset may be appropriately administered to the benefit of her creditors. Instead, now that Roney has already obtained the advantages of having her bankruptcy estate administered without consideration of her civil claims, it is clear that Roney's Motion to Reopen is targeted *solely* toward defeating the City's potential defense of judicial estoppel in the Civil Lawsuit.

The foregoing circumstances give the City standing to object to Roney's motion. See, e.g., <u>Slater v. U.S. Steel Corp.</u>, 820 F.3d 1193, 1226 n.86 (11th Cir. 2016) (citing <u>In re Lewis</u>, 273 B.R. 739, 743 (Bankr. N.D. Ga. 2001)), *reh'g en banc granted and vacated on other grounds*, 871 F.3d 1174 (11th Cir. 2017); <u>In re Lewis</u>, 273 B.R. at 742-43; see also, e.g., <u>In re Narcisse</u>, 2013 WL 1316706, at *3 (Bankr. E.D.N.Y. Mar. 29, 2013) (citing, e.g., Fed. R. Bankr. P. 2018(a)); <u>In re Tarrer</u>, 273 B.R. 724, 731 (Bankr. N.D. Ga. 2001).

## II.   <u>Argument</u>

The Bankruptcy Code permits a party to reopen a closed case for the purpose of administering previously undisclosed assets. See 11 U.S.C. § 350(b); Fed. R. Bankr. P. 5010. However, the Court should deny a motion under § 350(b) if it would

<div align="center">5</div>

be "futile to reopen the bankruptcy case for the particular purpose intended." See, e.g., Cadlerock Joint Venture L.P. v. Herendeen, 531 B.R. 869, 872 (M.D. Fla. 2015); see also In re Skyline Woods Country Club, 636 F.3d 467, 470-72 (8th Cir. 2011); In re Kinion, 207 F.3d 751, 757 (5th Cir. 2000).

The Court's authority to reopen a Chapter 13 case is also cabined by other provisions of the Code. A Plan may not be modified to provide for payments to be made to creditors more than five years after the first scheduled payment due date. See 11 U.S.C. § 1329(c); see also 11 U.S.C. § 1322(d) (permitting Chapter 13 plans to last for no longer than five years). Further, the Court has no authority whatsoever to modify a Chapter 13 Plan after that Plan has been completed. See 11 U.S.C. § 1329(a) (permitting modification "any time after confirmation of the plan *but before the completion of payments under such plan*") (emphasis supplied).

These statutes make it clear that Roney's motion to reopen her case must be denied. First, it would be futile to reopen this case because Roney's Plan, having already been completed as of July 2019, cannot now be modified by this Court to account for her previously undisclosed civil claims. See 11 U.S.C. § 1329(a); see also, e.g., In re Leahey, 2017 WL 4286136, at *2 (Bankr. D.N.J. Sept. 26, 2017) ("[The Court] clarifies that reopening is futile because section 1329(a) provides that *once a plan is completed, regardless of original length, it cannot be modified*.")

6

(emphasis supplied); <u>In re Thompson</u>, 344 B.R. 461, 465 (Bankr. W.D. Va. 2004) (quoting 11 U.S.C. § 1329(a)) (reiterating that "if a Chapter 13 Plan is to be modified, it must be done 'before the completion of payments under such plan'").

Second, even if Roney's Plan were not already completed, § 1329(a) provides no statutory authority for Roney to modify her Plan simply to account for undisclosed assets that will not affect payments or distributions under that Plan. The Code provides that a confirmed Plan may only be modified to:

> (1) **increase or reduce the amount of payments** on claims of a particular class provided for by the plan;
>
> (2) **extend or reduce the time for such payments**;
>
> (3) **alter the amount of the distribution** to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan; or
>
> (4) **reduce amounts to be paid** under the plan by the actual amount expended by the debtor to purchase health insurance for the debtor [under appropriate circumstances.]

11 U.S.C. § 1329(a) (emphasis supplied). Because any recovery on Roney's unrealized civil claims is entirely speculative at this point, subsections (1), (2), and (4) are inapplicable (and are in fact doubly so since the Plan has been completed). And Roney has made no showing that, pursuant to § 1329(a)(2), any modification of her Plan to account for her claims would result in an extended or reduced time for

7

making payments. Again, without more, reopening the action to modify Roney's Plan would be futile.

Third, and relatedly, Roney *cannot* obtain a modification of her Plan that would "extend . . . the time for such payments" under § 1329(a)(2), because any such extension would be barred by the Code. Roney's Plan was originally approved for a period of five years—the maximum permitted under Chapter 13. See 11 U.S.C. § 1322(d). Therefore, *even if* Roney's Plan were not already completed, and *even if* Roney could show that the untimely disclosure of her civil claims could somehow affect payments under her Plan, any new payments would extend beyond the maximum five-year period. Consequently, the modification sought by Roney is beyond the Court's authority. See 11 U.S.C. § 1329(c); cf. In re Jacobs, 263 B.R. 39, 49-50 (Bankr. N.D.N.Y. 2001) ("[A] plan, as originally confirmed, that provides for payments over the statutory maximum sixty month period **may not be modified after the expiration of that time** to provide for any additional payments. To do so would be an impermissible extension of a Chapter 13 plan in derogation of Code § 1329(c).") (internal citation omitted) (emphasis supplied). Once again, it would be futile to reopen Roney's case on this basis.

These principles are illustrated by In re Thompson, a case out of the U.S. Bankruptcy Court for the Western District of Virginia. See 344 B.R. at 465. In that

8

action, as in this one, the debtor failed to disclose the existence of a civil lawsuit prior to the completion of her Chapter 13 Plan. See id. at 462-63.[2] After the civil defendant sought summary judgment on grounds of judicial estoppel, the debtor moved to reopen her Chapter 13 proceeding to disclose the civil claims and avoid that outcome. See id. at 463. The court ultimately determined that "[f]or reasons particular to a Chapter 13 case in which a Plan has been confirmed, has been successfully completed, a discharge granted, and then closed, the Motion to reopen will be denied." See id. at 462. The court reasoned as follows:

> The normal length of a Chapter 13 case, as contemplated in the Bankruptcy Code, is a period of three years, although the Court "for cause" may approve a period up to "five years". 11 U.S.C. § 1322(d). A Chapter 13 Plan can be modified even after its confirmation, but the Code expressly prohibits any modification which would provide "for payments over a period . . . that expires after five years after [the time that the first payment under the original confirmed plan was due]". 11 U.S.C. § 1329(c). As pertinent to this case, . . . [t]he Debtor's Chapter 13 Plan was filed May 27, 1998. Accordingly, the first payment was due no later than June 26, 1998. As of the date of this Decision, we are just shy of *six* years after the date the first payment was due. **The Court is without authority to modify the Debtor's Chapter 13 Plan to provide additional payments to creditors more than five years** after June 26, 1998. **Moreover, if a Chapter 13 Plan is to be modified, it must be**

---

[2]Interestingly, because the Thompson debtor's civil claims were part of a sealed *qui tam* action against a hospital that was *also* a creditor in the Chapter 13 case, the district court had explicitly instructed the debtors not to disclose the existence of the claims until they were unsealed. See id. "As 'excuses' go, a pretty good one." See id. at 465. But these facts did not change the Court's limited authority to reopen the case. See id. at 465-66.

9

**done "before the completion of payments under such plan".** 11
U.S.C. § 1329(a).

Id. at 465 (bold emphasis supplied).

More recently, the United States Bankruptcy Court for the District of New

Jersey reached a similar conclusion in refusing to reconsider the denial of a motion

to reopen. See In re Leahey, 2017 WL 4286136, at *6. In that case, like this one, the

debtors failed to disclose civil claims that arose while their 60-month Chapter 13 Plan

was in effect. See id. at *1. After the Plan was completed and the case closed, the

debtors moved to reopen their case to add the civil claims as assets to be

administered. See id. The court denied this motion, holding that "though the lawsuit

was property of the estate, reopening would be futile as the plan could not be

modified to extend beyond 60 months." See id. On reconsideration, the court clarified

its reasoning:

> This court reminds the Leaheys that it denied their motion to reopen
> because their plan would have to be modified to account for the
> additional distribution, but **a chapter 13 plan may not exceed 60
> months.** Here it clarifies that **reopening is futile because section
> 1329(a) provides that once a plan is completed, regardless of
> original length, it cannot be modified.** . . .

> [T]he Leaheys would not be extending an existing plan to cure a default,
> but attempting to add years to a completed plan to make a distribution
> not originally contemplated in their confirmed plan. Not only, as
> originally held, could this court not confirm a modified plan that
> exceeded 60 months, 11 U.S.C. §§ 1325(a)(1), 1329(b)(1), but the

10

> Leaheys could not modify the plan in the first place, since modification is limited to "any time after confirmation of the plan but *before the completion of payments under such plan*. . . ." 11 U.S.C. § 1329(a) (emphasis supplied).

See id. at *2 (bold emphasis supplied).

The reasoning on In re Leahey and In re Thompson controls here. Because Roney's Chapter 13 Plan "has been confirmed, has been successfully completed, a discharge granted, and then closed," the Court now lacks authority to modify the Plan, and could not modify it as Roney apparently contemplates in any event. See Thompson, 344 B.R. at 462.

Therefore, the only apparent purpose to be served by reopening this case would be to deprive the City of an estoppel argument in the Civil Lawsuit. But "**the impact on a judicial estoppel defense should not be the basis of a bankruptcy court's decision of whether or not to reopen a bankruptcy case** because the conflicting assertion did not occur in the bankruptcy court." See, e.g., In re Lott, 277 B.R. 871, 873-74 (Bankr. S.D. Ga. 2001) (emphasis supplied).

Because the Plan cannot now be modified, and because Roney can point to no other valid reason relating to the administration of her Chapter 13 Plan to reopen this case, Roney's motion is due to be denied as futile. See, e.g., Cadlerock Joint Venture, 531 B.R. at 872.

11

### III.   Conclusion

WHEREFORE, the City objects to Roney's Motion to Reopen (Doc. 74) and respectfully requests that said motion be DENIED.

<div style="margin-left: 50%;">

s/ David J. Canupp
David J. Canupp

s/ J. Bradley Emmons
J. Bradley Emmons

s/ Tracy A. Marion
Tracy A. Marion

</div>

LANIER FORD SHAVER & PAYNE, P.C.
P. O. Box 2087
2101 West Clinton Avenue,  Suite 102 (35805)
Huntsville, AL 35804
Phone: 256-535-1100 / Fax: 256-533-9322
E-mail: djc@lanierford.com, jbe@lanierford.com, tam@lanierford.com

Attorneys for City of Huntsville, Alabama

<u>CERTIFICATE OF SERVICE</u>

I hereby certify that I have served a copy of the foregoing pleading upon **all creditors listed on the mailing matrix** and the foregoing by depositing a copy of same in the United States mail properly addressed and first class postage prepaid on this the 16th day of December, 2019.

Trustee
Michele T. Hatcher
Chapter 13 Trustee
P.O. Box 2388
Decatur, AL 35602
Phone: 256-350-0442

Amy K. Tanner
Bonds, Botes, Sykstus, Tanner & Ezzell, P.C.
225 Pratt Avenue
Huntsville, AL 35801
Phone: (256) 539-9899
Fax: (256) 539-9895
Email:  atanner@bondnbotes.com

Rebekah Keith McKinney
Philip D. DeFatta
WATSON MCKINNEY LLP
200 Clinton Avenue, West Suite 110
Huntsville, AL 35801
Phone: 256-536-7423
Fax: 256-536-2689
Email: mckinney@watsonmckinney.com

s/ Tracy A. Marion
Tracy A. Marion

13

# EXHIBIT A

FILED

2018 Dec-20  PM 05:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| STEPHANIE M. RONEY, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | **Civil Action No.:** |
| | ) | **5:18-cv-1482-CLS** |
| CITY OF HUNTSVILLE, ALABAMA, | ) | |
| | ) | |
| **Defendant.** | ) | |

_____

### FIRST AMENDED COMPLAINT
_____

### <u>INTRODUCTION</u>

1.      This is an action alleging sex discrimination and retaliation in violation of Title VII of *The Civil Rights Act of 1964*, as amended, 42 U.S.C. §§ 2000e through 2000e-17 ("Title VII"), and disability discrimination in violation of *The Americans with Disabilities Act of 1990*, as amended, 42 U.S.C. §§ 12101 through 12213 ("ADA") and the *Rehabilitation Act*, 29 U.S.C. § 794.  This Action also alleges violation of the *Family Medical Leave Act* of 1993, 29 U.S.C. §§ 2601, et seq., ("FMLA").

2.      Plaintiff, Stephanie M. Roney, seeks equitable relief, compensatory damages, attorneys' fees, and costs.

### <u>JURISDICTION</u>

1

3.      This Court has jurisdiction in accordance with 28 U.S.C. § 1331, 1343, 2201, 2202, and 42 U.S.C. § 12133.  Venue is proper pursuant to 28 U.S.C. § 1391.

4.      Plaintiff has diligently sought to fulfill all conditions precedent to the institution of this action under Title VII and the ADA.

5.      The unlawful employment practices alleged herein have been committed within the Northern District of Alabama, Northeastern Division.

## PARTIES

6.      Plaintiff is a caucasian female citizen of the United States and a resident of Huntsville, Madison County, Alabama 35811.

7.      Defendant, City of Huntsville, Alabama is a municipal governmental entity located in the State of Alabama.

8.      City of Huntsville was and is an "employer," as that term is defined by Title VII, the FMLA, and the ADA and was and is a "program or activity receiving Federal financial assistance" as defined by 29 U.S.C. § 794.

## ADMINISTRATIVE PROCEEDINGS

9.      Plaintiff timely filed her charge of discrimination within one hundred and eighty days of the occurrence of the last discriminatory act. A copy of the Plaintiff's Charge of Discrimination is attached hereto as Exhibit "1."

10.     On or about June 13, 2018, the United States Equal Opportunity Commission ("EEOC") issued Plaintiff a Notice of Right to Sue ("RTS"). A copy of

2

Plaintiff's RTS letter is attached hereto as Exhibit "2."

11.    Plaintiff timely filed her original Complaint within ninety days of receiving her RTS letter, and is timely filing her First Amended Complaint in accordance with this Court's Order and Memorandum Opinion of December 4, 2018.

## FACTUAL ALLEGATIONS

12.    Plaintiff became employed by the City on May 4, 2004, in its Parks and Recreation Department as a Life Guard at the Brahan Springs Natatorium (the "Natatorium").

13.    Plaintiff remains employed by the City in its Parks and Recreation Department, but is now assigned to the Richard Showers Center pool.

### The Initial Sexual and Racial Harassment
### Experienced by Plaintiff During her Employment[1]

14.    While Plaintiff was working at the Natatorium, she worked with Mick Roney (no relation to her), Mark Deal, C.J. Vankampen, Kim Putman and Pat McCool, among others.

15.    In 2005, Plaintiff met with Saundra Simmons, the City's Equal Employment Opportunity Officer, and informed her that Mick Roney had subjected her to a variety of unwanted sexual advances and commentary, including explicit

---

[1] Plaintiff provides the information in this section as background information to frame the historical context which underlies the Plaintiff's current timely claims for sexual discrimination and retaliation.

3

requests regarding sexual activity with him, requests that she date him, innuendos of a sexual nature, discussions of types of sexual activity he liked, and explicit commentary about women who came into the pool.

16.    Plaintiff also informed Ms. Simmons during that, or a subsequent conversation soon thereafter, that her co-workers, Pat McCool and Mick Roney, were making racial slurs about her and others, including calling Plaintiff a "nigger lover" because she was dating an African-American man, who they also referred to as a "nigger" and a "blue gum" and making jokes about bi-racial children.

17.    Plaintiff's son, who was born in 2007, is bi-racial, as his father his African-American and Plaintiff is Caucasian.

18.    In or around Summer of 2008, Mark Deal told Plaintiff he could never "be with" a woman who has "been with" a "nigger" and made offensive comments about bi-racial children.  Plaintiff verbally reported these statements to Simmons shortly thereafter.

19.    Plaintiff did not pursue any litigation related to the events outlined in Paragraphs 14 - 18 and continued to work at the Natatorium and, despite Plaintiff having reported these racially and sexually offensive actions to Simmons, Roney, Deal and McCool continued to make similar racially and sexually offensive statements to Plaintiff.

4

20.     On January 23, 2012, Plaintiff was robbed, assaulted and held hostage in her home by two African-American men.

21.     As a result of the robbery and hostage situation, Plaintiff suffered Post-Traumatic Stress Disorder ("PTSD") and was out of work for several days, and has been treated for PTSD since that time.

22.     When Plaintiff returned to work after the hostage situation on January 29, 2012, a large white board at the Natatorium—which ordinarily just contained football score information—contained several written statements directed at Plaintiff, including "[i]f you lay down with dogs expect to get fleas," "[i]nstant Karma," "[w]hat goes around comes around," and "[i]t all comes out in the wash."

23.     That same day, Deal told Plaintiff that he, McCool and Vankampen wrote the statements on the board and that the statements were directed at Plaintiff.

24.     Plaintiff found out that same day that McCool told patrons at the Natatorium that African-American men had robbed Plaintiff.

25.     Plaintiff made a verbal complaint that same day to Jerry Shelton, Mick Roney's boss, and to Mick Roney, about the white board and it was removed.

26.     On or around February 2, 2012, while at work, Plaintiff and McCool discussed the whiteboard.

27.     McCool, the same day after his February 2, 2012, discussion with Plaintiff, told Shelton that Plaintiff threatened him.

5

28.     That same day, rather than punishing McCool, Deal, Vankampen, Steve Ivey, the Director of the Parks and Recreation Department, transferred Plaintiff from the Natatorium to the Williams Aquatic Center, while McCool, Deal and Vankampen were permitted to remain at the Natatorium.

29.     Plaintiff did not want to be transferred to the Williams Aquatic Center, and she verbally objected to Shelton about the transfer.

30.     Shortly thereafter, McCool swore out a warrant for Plaintiff's arrest for allegedly threatening him. Plaintiff was arrested on March 23, 2012.

31.     In or around the Summer, 2014, Plaintiff was advised by co-workers, including, Diamond Weathersby and Alexandria (last name unknown) that Putman called Plaintiff's son and other black people "monkeys," and Plaintiff complained to Ivey.

**Defendants' Discrimination and Retaliation
Against Plaintiff Beginning November 14, 2016.**

32.     Plaintiff continued working at the Williams Aquatic Center from February 2, 2012, until November 4, 2016, when she was informed by Ivey, that she was being transferred to the Richard Showers Center Pool ("Showers Center"), effective November 14, 2016, and that her work shift was being changed from day time-only to day and night-time.

6

33.     At the time of the transfer, the Williams Aquatic Center was slated to close five months later (it actually closed a year later), as the City was in the process of renovating and increasing the size of the Natatorium from one pool to three pools.

34.     Plaintiff requested that Ivey reconsider her reassignment given that she is a single mother and the new shift would require that she work the late shift, until 8:15 p.m. (previously her hours were 7:00 a.m. to 4:00 p.m.). The shift change would prevent Plaintiff from seeing and parenting her young son except for an hour or two each evening, and it would require that she hire a babysitter to pick him up from school and watch him every day, which would present a severe financial hardship for her, as she was only making $16.15 per hour.

35.     Plaintiff's reassignment would also require that she work with Mick Roney, who sexually harassed her in the past.

36.     Plaintiff pointed out to Ivey that there were other male employees—including, but not limited to, Jerry Pitney and at least one other (name unknown at this time)—working at the Williams Aquatic Center who were qualified for the Showers Center position and willing to take the position. Plaintiff asked Pitney to transfer one of these male individuals instead of herself.

37.     Plaintiff asked Ivey, Delliser and Tena (last name unknown, but who worked in Human Resources) that she be permitted to remain at the Williams Aquatic Center until it actually closed and then be moved to the Natatorium to work.

7

38.     Ivey refused Plaintiff's requests and told Plaintiff that, due to her "past" with the "boys" currently working at the Natatorium, she was being transferred to the Showers Center.

39.     Plaintiff's PTSD was exacerbated after she learned that she was being forced to work with Mick Roney again at the Showers Center. Due to the severity of Plaintiff's PTSD, she was forced to take medical leave from work from on or around November 8, 2016, until January 19, 2017.

40.     On or around November 18, 2016, Plaintiff told Byron Thomas, head of Human Resources, that her PTSD was worsened due to the possibility of having to work with Roney and asked him, because of her PTSD, to transfer her elsewhere, or allow her to continue working at the Williams Aquatic Center until it closed, and then transfer her to the Natatorium.

41.     During that same timeframe (Plaintiff does not recall the exact date), Plaintiff told Simmons that she was off work due to an elbow injury and the exacerbation of her PTSD caused by her reassignment to work with Mick Roney again.

42.     Plaintiff also told Simmons that she was under a doctor's care due to her PTSD and was unsure when she could return to work.

43.     On January 3, 2017, Dave Delliser, the Superintendent of Parks and Recreation, terminated Plaintiff via telephone.

8

44.     Plaintiff had submitted the paperwork for leave pursuant to the Family and Medical Leave Act ("FMLA") on around November 28, 2016.

45.     On or about January 3, 2017, Plaintiff contacted Byron Thomas at the City's Human Resources Department.

46.     After Plaintiff's conversation with Byron Thomas, her termination was reversed.

47.     Plaintiff's request for accommodation of her PTSD was denied, and she reported to work at the Showers Center on January 19, 2017, where she currently works.

48.     On March 27, 2017, Plaintiff filed a Charge of Discrimination with the EEOC.

49.     Since that time, in retaliation for her filing of the EEOC Charge, Ivey has instructed Delisser to threaten Plaintiff with termination and to counsel Plaintiff on multiple occasions after she attempted to utilize sick and personal leave, and required Plaintiff to submit additional paperwork to justify any absences that other City employees were not required to submit.

## <u>COUNT I – TITLE VII SEX DISCRIMINATION</u>

50.     Plaintiff's Title VII sex discrimination claims against the City arise from the circumstances and conduct alleged *supra*, Paragraphs 32 through 49.

51.     The circumstances and conduct alleged *supra*, Paragraphs 14 through 31 constitute additional supporting evidence that Defendants acted with discriminatory motive and intent against Plaintiff.

52.     The City of Huntsville's conduct in moving Plaintiff to the Showers Center Pool rather than similarly situated male employees, refusing to permit her to work at the Natatorium instead and changing her work hours constituted disparate treatment against Plaintiff because of her sex, female, in violation of Title VII.

53.     The City of Huntsville's discriminatory actions against Plaintiff were intentional and were performed with malice and/or done with reckless disregard to Plaintiff's federally protected civil rights under Title VII.

54.     As a direct and proximate consequence of the City of Huntsville's discriminatory conduct, Plaintiff suffered injuries and damages.

55.     As a proximate consequence of the City of Huntsville's discriminatory actions, Plaintiff lost wages and/or accrued leave for missed work, benefits, and other accrued emoluments associated with her employment, promotional opportunities and benefits; caused to suffer intense emotional distress, embarrassment, humiliation, anxiety and concern.

56.     Plaintiff is entitled to an award of back pay, benefits, consequential, and compensatory damages against the City of Huntsville in an amount to be determined by the trier of fact.

10

57.    The conduct described herein constituted unlawful discrimination against Plaintiff in terms, conditions and privileges of employment on the basis of her sex in violation of Title VII.

58.    Plaintiff respectfully prays that this Court assume jurisdiction of this action and, after trial, grant the following relief for the City of Huntsville's violation of Title VII's prohibition against sex discrimination:

(A)    issue a declaratory judgment that the City of Huntsville's employment policies, practices, procedures, conditions and customs, including the action taken against Plaintiff, violated Plaintiff's rights as secured by Title VII;

(B)    order that Plaintiff be placed into a position at the Natatorium equivalent in duties and hours of work to her prior position at the Williams Aquatic Center;

(C)    issue a permanent injunction enjoining the City of Huntsville, its agents, successors, employees, attorneys and those acting in concert with the City of Huntsville, from continuing to violate Plaintiff's rights as well as those who are similarly situated pursuant to Title VII;

(D)    award Plaintiff damages including back pay, front pay, benefits, nominal and compensatory damages;

(E)    award Plaintiff reasonable costs, attorneys' fees, and expenses; and

(F)    award such other relief and benefits as the cause of justice may require.

11

## **COUNT II – TITLE VII RETALIATION**

59.    Plaintiff's Title VII retaliation claims against the City arise from the circumstances and conduct alleged *supra*, Paragraphs 32 through 49.

60.    The circumstances and conduct alleged *supra*, Paragraphs 14 through 31 constitute additional supporting evidence that Defendants acted with discriminatory motive and intent against Plaintiff.

61.    The City of Huntsville's conduct in transferring Plaintiff to the Showers Center Pool rather than the Natatorium due to Plaintiff's prior complaints of sexual harassment and race discrimination made against co-workers at the Natatorium, forcing her to work with the employee who had previously subjected her to sexual harassment, and modifying Plaintiff's work hours to substantially less desirable hours that worked a severe personal and financial hardship on Plaintiff with respect to caring for her child, constituted unlawful retaliation against Plaintiff, in violation of Title VII.

62.    Defendant's retaliatory motive is evidenced by Ivey's comment that Plaintiff was being transferred to the Shower's Center instead of the Natatorium because of her "past" with the "boys" currently working at the Natatorium or set to be transferred there.

63.    Further, the City's conduct after the filing of Plaintiff's Charge of Discrimination with EEOC, including denying Plaintiff sick and personal leave,  and

12

threatening Plaintiff with termination of her employment, constituted unlawful retaliation against Plaintiff in violation of Title VII.

64.    The City of Huntsville's retaliatory actions against Plaintiff were intentional and were performed with malice and/or done with reckless disregard to Plaintiff's federally protected civil rights under Title VII.

65.    As a direct and proximate consequence of the City of Huntsville's retaliatory actions, Plaintiff lost wages and accrued leave, benefits and other accrued emoluments associated with her employment, promotional opportunities and benefits; caused to suffer intense emotional distress, embarrassment, humiliation, anxiety and concern.

66.    Plaintiff is entitled to an award of back pay, benefits, consequential, and compensatory damages against the City of Huntsville in an amount to be determined by the trier of fact.

67.    Plaintiff respectfully prays that this Court assume jurisdiction of this action and, after trial, grant the following relief for the City of Huntsville's violation of Title VII's prohibition against retaliation:

(A)    issue a declaratory judgment that the City of Huntsville's employment policies, practices, procedures, conditions and customs, including the action taken against Plaintiff, violated Plaintiff's rights as secured by Title VII;

13

(B)    order that Plaintiff be placed into a position at the Natatorium equivalent in duties and hours of work to her prior position at the Williams Aquatic Center;

(C)    issue a permanent injunction enjoining the City of Huntsville, its agents, successors, employees, attorneys and those acting in concert with the City of Huntsville, from continuing to violate Plaintiff's rights as well as those who are similarly situated pursuant to Title VII;

(D)    award Plaintiff damages including back pay, front pay, benefits, nominal and compensatory damages;

(E)    award Plaintiff reasonable costs, attorneys' fees, and expenses; and

(F)    award such other relief and benefits as the cause of justice may require.

## COUNT III – DISABILITY DISCRIMINATION – AMERICANS WITH DISABILITIES ACT and THE REHABILITATION ACT

68.    Plaintiff's disability discrimination claims, brought against the City under the ADA and the Rehabilitation Act, arise from the circumstances and conduct alleged *supra*, Paragraphs 32 through 49.

69.    The circumstances and conduct alleged *supra*, Paragraphs 14 through 31 constitute additional supporting evidence that Defendants acted with discriminatory motive and intent against Plaintiff.

70.    Plaintiff is disabled as defined by the ADA and the Rehabilitation Act in that she suffers from Post Traumatic Stress Disorder.

14

71.     The City of Huntsville intentionally discriminated against Plaintiff by refusing to accommodate her disability.

72.     Plaintiff sought reasonable accommodations of her disability, including, but not limited to, returning her to or not transferring her from her former position at the Williams Aquatic Center or transferring her to the Natatorium so she did not have to work with Mick Roney, who had previously sexually harassed her, and so her work schedule would not be changed, in order to prevent continued exacerbation of her PTSD.

73.     Accommodating Plaintiff would not have caused undue hardship to the City of Huntsville.

74.     The City of Huntsville, by its actions, has intentionally, maliciously and with reckless indifference discriminated against Plaintiff because of her disability with regard to employment and its refusal to accommodate her disability.

75.     As a result of the City of Huntsville's actions, Plaintiff has suffered extreme harm, including pain, humiliation, mental anguish and suffering, and loss of enjoyment of life and other compensatory damages, in an amount to be determined by the Court.

76.     Plaintiff respectfully prays that this Court assume jurisdiction of this action and, after trial, grant the following relief for the City of Huntsville's violation of the ADA and the Rehabilitation Act's prohibitions against disability

discrimination:

(A)   issue a declaratory judgment that the City of Huntsville's employment policies, practices, procedures, conditions and customs, including the action taken against Plaintiff, violated Plaintiff's rights as secured by the ADA and the Rehabilitation Act;

(B)   order that Plaintiff be placed into a position at the Natatorium equivalent in terms of duties and hours of work to her prior position at the Williams Aquatic Center;

(C)   issue a permanent injunction enjoining the City of Huntsville, its agents, successors, employees, attorneys and those acting in concert with the City of Huntsville, from continuing to violate Plaintiff's rights as well as those who are similarly situated pursuant to the ADA and the Rehabilitation Act;

(D)   award Plaintiff damages including back pay, front pay, benefits, nominal and compensatory damages;

(E)   award Plaintiff reasonable costs, attorneys' fees, and expenses; and

(F)   award such other relief and benefits as the cause of justice may require.

## COUNT IV-INTERFERENCE WITH RIGHTS UNDER THE FMLA

77.   Plaintiff's inference with FMLA rights claims against the City arise from the circumstances and conduct alleged *supra*, Paragraphs 32 through 49,

16

particularly Paragraphs 39 through 47 describing Plaintiff's attempt to take FMLA leave.

78.    The circumstances and conduct alleged *supra*, Paragraphs 14 through 31 constitute additional supporting evidence that Defendants acted with discriminatory motive and intent against Plaintiff.

79.    Defendant is a covered employer as defined under 29 U.S.C. § 2611(4)(A).

80.    Plaintiff is an eligible employee as defined under 29 U.S.C. § 2611(2)(A).

81.    Plaintiff's PTSD qualifies as serious medical condition under the FMLA.

82.    The Defendant had knowledge of Plaintiff's medical condition. Defendant had knowledge of Plaintiff's need for medical leave.

83.    The Superintendent of the City's Parks and Recreation Department, Dave Delisser, informed Plaintiff she was being terminated after taking leave for PTSD.

84.    Although the decision to terminate the Plaintiff was ultimately reversed, the Defendant's actions interfered with the exercise of Plaintiff's right to job restoration under 29 U.S.C. § 2614 (1)(A) & (B).

17

85.     The defendant willfully interfered with the exercise of Plaintiff's right to job restoration in violation of 29 U.S.C. § 2615(a)(2).

86.     Defendant continues to interfere with Plaintiff's rights under the FMLA because of Delliser and Ivey's continued threats toward and counseling of Plaintiff when she attempts to utilize medical leave;

87.     Plaintiff respectfully prays that this Court assume jurisdiction of this action and, after trial, grant the following relief for the City of Huntsville's violation of the FMLA's prohibition against interference with exercise of FMLA leave:

(A)     issue a declaratory judgment that the City of Huntsville's employment policies, practices, procedures, conditions and customs, including the action taken against Plaintiff, violated Plaintiff's rights as secured by the FMLA;

(B)     issue a permanent injunction enjoining the City of Huntsville, its agents, successors, employees, attorneys and those acting in concert with the City of Huntsville, from violating Plaintiff's rights to use FMLA leave in the future;

(C)     award Plaintiff reasonable costs, attorneys' fees, and expenses; and

(D)     award such other relief and benefits as the cause of justice may require.

Respectfully submitted this the 20th day of December, 2018.

/s/ Rebekah Keith McKinney
Rebekah Keith McKinney (ASB-3137-T64J)
Philip M. DeFatta (ASB-9307-R74F)
*Attorney for Plaintiff*

18

Watson McKinney, LLP
200 Clinton Avenue, West, Suite 110
Huntsville, Alabama 35801
(256) 536-7423 telephone
mckinney@watsonmckinney.com
defatta@watsonmckinney.com

## JURY DEMAND

### PLAINTIFF DEMANDS TRIAL BY STRUCK JURY.

/s/ Rebekah Keith McKinney
Rebekah Keith McKinney

19

## **CERTIFICATE OF SERVICE**

 I hereby certify that on this the 20th day of December, 2018, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system and have served a copy of same upon the following by electronic service or by placing a copy of same in the United States mail, postage prepaid and properly addressed:

David J. Canupp, Esq.
J. Bradley Emmons, Esq.
Lanier, Ford, Shave & Payne, PC
2101 W. Clinton Avenue, Ste. 102
P.O. Box 2087
Huntsville, AL  35804

     /s/ Rebekah Keith McKinney
     Rebekah Keith McKinney

FILED
2018 Dec-20  PM 05:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT  1

# CHARGE OF DISCRIMINATION

This form is affected by the Privacy Act of 1974; see Privacy Act Statement before completing this form.

| AGENCY | CHARGE NUMBER |
|---|---|
| ☐ FEPA ☒ EEOC | 420-2017-01499 |

_____ and EEOC

*(State or local Agency, if any)*

NAME *(Indicate Mr., Ms., or Mrs.)*
Ms. Stephanie M. Roney

HOME TELEPHONE NO. *(Include Area Code)*
▮▮▮▮▮▮▮

| STREET ADDRESS ▮▮▮ | CITY, STATE AND ZIP CODE ▮▮▮ | DATE OF BIRTH ▮▮▮ |
|---|---|---|

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME *(If more than one list below.)*

| NAME City of Huntsville | NO. OF EMPLOYEES/MEMBERS 500+ | TELEPHONE NUMBER *(Include Area Code)* 256-427-5240 |
|---|---|---|

| STREET ADDRESS P.O. Box 308 | CITY, STATE AND ZIP CODE Huntsville, AL 35804 | COUNTY Madison |
|---|---|---|

| NAME | | TELEPHONE NUMBER *(Include Area Code)* |
|---|---|---|

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|

CAUSE OF DISCRIMINATION BASED ON *(Check appropriate box(es))*

☐ RACE  ☐ COLOR  ☒ SEX  ☒ RELIGION  ☐ NATIONAL ORIGIN
☒ RETALIATION  ☐ AGE  ☒ DISABILITY  ☐ OTHER *(Specify)*

DATE DISCRIMINATION TOOK PLACE
EARLIEST                LATEST
Nov. 4, 2016
☒ CONTINUING ACTION

THE PARTICULARS ARE *(If additional space is needed, attach extra sheet(s)):*

I became employed by the City of Huntsville in its Parks and Recreation Department in 2003 or 2004 as a Water Aerobics Instructor/Life Guard. I was originally assigned to the Brahan Springs Natatorium (the "Natatorium"). During my assignment to that facility, I was subjected to a sexually hostile work environment by my supervisor, Mick Roney, as were some of my female co-workers. I was also subjected to a racially discriminatory work environment by Roney and a co-worker, Pat McCool. On multiple occasions, I reported to Human Resources the racially and sexually discriminatory behavior of Roney and McCool to which I was subjected. In 2012, McCool wrote racially offensive statements on a white board at the Natatorium and I complained about that as well. As a result of my complaints, both Roney and McCool retaliated against me, including harassing me, writing me up and McCool swearing out a warrant for my arrest, which resulted in my arrest. I continued in my employment at the Williams Aquatic Center until November 2016, when I was informed that I was being transferred to the Dr. Richard Showers Pool (the "Showers Pool") and that my schedule was being modified to work different hours than I had been assigned to work prior to that. I objected to my transfer and schedule change because Mick Roney, who had subjected me to a sexually hostile work environment, was working at the Showers Pool and I was afraid to work with him again and because I am a single mother and the schedule requires me to work until after 8:00 p.m. at night which required me to hire someone to pick my child up from school which I had not had to do previously and which created a severe financial hardship for me.

CHARGE CONTINUED ON NEXT PAGE ....

| | NOTARY - (When necessary to meet State and Local Requirements) |
|---|---|
| I declare under penalty of perjury that the foregoing is true and correct. | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| 3-27-17 Date  *Stephanie M. Roney* Charging Party *(Signature)* | SIGNATURE OF COMPLAINANT SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Day, month, and year) |

EEOC Form 5 (Rev. 06/92)

RONEY CHARGE CONTINUED FROM PREVIOUS PAGE...

There were male employees with less seniority than me who could have been transferred instead of me. I objected to my transfer to Steve Ivey, the Director of Parks and Recreation, and he told me that I was being transferred to the Showers Pool "because of your past" with the "boys", all of whom either were still at the Natatorium or who will be eventually transferred back to the Natatorium, which is undergoing a renovation and expansion. He also told me that I was not part of the "new plan" for the expanded Natatorium and I was not going to that pool. As a result of my transfer to the Showers Pool and being forced to work with Mick Roney again, who is currently the supervisor at the Showers Pool, triggered my previously diagnosed Post Traumatic Stress Disorder ("PTSD"). I missed work during the months of November, December and part of January due to my PTSD, and on January 3, 2017, I was called by Dave Delliser, who is the Superintendent of Parks and Recreation, and was told that I was being terminated. The decision was reversed after I told him I was out of work due to my PTSD, for which I had already provided Parks and Recreation the forms for FMLA leave. I requested accommodation of the PTSD - that I not be required to work with Roney and be returned to my former position at the Williams Aquatic Center. This request was denied.

I believe the above actions constitute disparate treatment because of my sex and retaliation for my prior complaints of race and sex discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, violation of the Americans with Disabilities Act and/or violation of the Family and Medical Leave Act.

_Stephanie M. Roney_
I declare under penalty of perjury that the foregoing is true and correct.

3-27-17
Date

FILED

2018 Dec-20  PM 05:47
U.S. DISTRICT COURT
N.D. OF ALABAMA

# EXHIBIT  2

EEOC Form 161 (11/16)

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Stephanie Roney<br>c/o Rebekah K. McKinney<br>WATSON MCKINNEY, LLP<br>200 Clinton Avenue, W. Suite 110<br>Huntsville, AL 35801 | From: | Birmingham District Office<br>Ridge Park Place<br>1130 22nd Street<br>Birmingham, AL 35205 |
|---|---|---|---|

|  | On behalf of person(s) aggrieved whose identity is CONFIDENTIAL (29 CFR §1601.7(a)) |  |  |
|---|---|---|---|
| EEOC Charge No. | EEOC Representative | | Telephone No. |
| 420-2017-01499 | SHERI GUENSTER,<br>Supervisory Investigator | | (205) 212-2059 |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[ ] The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[ ] Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

[ ] The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

[ ] Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

[X] The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

[ ] The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[ ] Other (briefly state)

## - NOTICE OF SUIT RIGHTS -
### (See the additional information attached to this form.)

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

Enclosures(s)

**BRADLEY ANDERSON,**
**District Director**

6/13/18
(Date Mailed)

cc:
Byron K. Thomas
Human Resources Director
City of Huntsville
308 Fountain Circle
Huntsville, AL 35801

SCANNED TO FILE

Enclosure with EEOC
Form 161 (11/16)

## INFORMATION RELATED TO FILING SUIT
## UNDER THE LAWS ENFORCED BY THE EEOC

*(This information relates to filing suit in Federal or State court <u>under Federal law</u>.*
*If you also plan to sue claiming violations of State law, please be aware that time limits and other*
*provisions of State law may be shorter or more limited than those described below.)*

**PRIVATE SUIT RIGHTS**   --   **Title VII of the Civil Rights Act, the Americans with Disabilities Act (ADA), the Genetic Information Nondiscrimination Act (GINA), or the Age Discrimination in Employment Act (ADEA):**

In order to pursue this matter further, you must file a lawsuit against the respondent(s) named in the charge **within 90 days** of the date you *receive* this Notice.  Therefore, you should **keep a record of this date**.  Once this 90-day period is over, your right to sue based on the charge referred to in this Notice will be lost.  If you intend to consult an attorney, you should do so promptly.  Give your attorney a copy of this Notice, and its envelope, and tell him or her the date you received it.  Furthermore, in order to avoid any question that you did not act in a timely manner, it is prudent that your suit be filed **within 90 days of the date this Notice was *mailed* to you** (as indicated where the Notice is signed) or the date of the postmark, if later.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction.  (Usually, the appropriate State court is the general civil trial court.)  Whether you file in Federal or State court is a matter for you to decide after talking to your attorney.  Filing this Notice is not enough.  You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief.  Courts often require that a copy of your charge must be attached to the complaint you file in court.  If so, you should remove your birth date from the charge.  Some courts will not accept your complaint where the charge includes a date of birth.  Your suit may include any matter alleged in the charge or, to the extent permitted by court decisions, matters like or related to the matters alleged in the charge.  Generally, suits are brought in the State where the alleged unlawful practice occurred, but in some cases can be brought where relevant employment records are kept, where the employment would have been, or where the respondent has its main office.  If you have simple questions, you usually can get answers from the office of the clerk of the court where you are bringing suit, but do not expect that office to write your complaint or make legal strategy decisions for you.

## PRIVATE SUIT RIGHTS   --   Equal Pay Act (EPA):

EPA suits must be filed in court within 2 years (3 years for willful violations) of the alleged EPA underpayment: back pay due for violations that occurred **more than <u>2 years (3 years)</u> before you file suit** may not be collectible.  For example, if you were underpaid under the EPA for work performed from 7/1/08 to 12/1/08, you should file suit <u>before 7/1/10</u> – *not* 12/1/10 -- in order to recover unpaid wages due for July 2008.  This time limit for filing an EPA suit is separate from the 90-day filing period under Title VII, the ADA, GINA or the ADEA referred to above.  Therefore, if you also plan to sue under Title VII, the ADA, GINA or the ADEA, in addition to suing on the EPA claim, suit must be filed within 90 days of this Notice <u>and</u> within the 2- or 3-year EPA back pay recovery period.

## ATTORNEY REPRESENTATION   --   Title VII, the ADA or GINA:

If you cannot afford or have been unable to obtain a lawyer to represent you, the U.S. District Court having jurisdiction in your case may, in limited circumstances, assist you in obtaining a lawyer.  Requests for such assistance must be made to the U.S. District Court in the form and manner it requires (you should be prepared to explain in detail your efforts to retain an attorney).  Requests should be made well before the end of the 90-day period mentioned above, because such requests do <u>not</u> relieve you of the requirement to bring suit within 90 days.

## ATTORNEY REFERRAL AND EEOC ASSISTANCE   --   All Statutes:

You may contact the EEOC representative shown on your Notice if you need help in finding a lawyer or if you have any questions about your legal rights, including advice on which U.S. District Court can hear your case.  If you need to inspect or obtain a copy of information in EEOC's file on the charge, please request it promptly in writing and provide your charge number (as shown on your Notice).  While EEOC destroys charge files after a certain time, all charge files are kept for at least 6 months after our last action on the case.  Therefore, if you file suit and want to review the charge file, **please make your review request <u>within 6 months</u> of this Notice.**  (Before filing suit, any request should be made within the next 90 days.)

*IF YOU FILE SUIT, PLEASE SEND A COPY OF YOUR COURT COMPLAINT TO THIS OFFICE.*

**NOTICE OF RIGHTS UNDER THE ADA AMENDMENTS ACT OF 2008 (ADAAA):**   The ADA was amended, effective January 1, 2009, to broaden the definitions of disability to make it easier for individuals to be covered under the ADA/ADAAA. A disability is still defined as (1) a physical or mental impairment that substantially limits one or more major life activities (actual disability); (2) a record of a substantially limiting impairment; or (3) being regarded as having a disability. *However, these terms are redefined, and it is easier to be covered under the new law.*

<u>**If you plan to retain an attorney to assist you with your ADA claim, we recommend that you share this information with your attorney and suggest that he or she consult the amended regulations and appendix, and other ADA related publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.**</u>

**"Actual" disability or a "record of" a disability (note: if you are pursuing a failure to accommodate claim you must meet the standards for either "actual" or "record of" a disability):**

- ➤ **The limitations from the impairment no longer have to be severe or significant** for the impairment to be considered substantially limiting.
- ➤ In addition to activities such as performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, thinking, concentrating, reading, bending, and communicating (more examples at 29 C.F.R. § 1630.2(i)), **"major life activities" now include the operation of major bodily functions**, such as: functions of the immune system, special sense organs and skin; normal cell growth; and digestive, genitourinary, bowel, bladder, neurological, brain, respiratory, circulatory, cardiovascular, endocrine, hemic, lymphatic, musculoskeletal, and reproductive functions; or the operation of an individual organ within a body system**.**
- ➤ **Only one** major life activity need be substantially limited.
- ➤ With the exception of ordinary eyeglasses or contact lenses, **the beneficial effects of "mitigating measures"** (e.g., hearing aid, prosthesis, medication, therapy, behavioral modifications) **are not considered** in determining if the impairment substantially limits a major life activity.
- ➤ An impairment that is **"episodic"** (e.g., epilepsy, depression, multiple sclerosis) or **"in remission"** (e.g., cancer) is a disability if it **would be substantially limiting when active**.
- ➤ An impairment **may be substantially limiting even though** it lasts or is expected to last **fewer than six months**.

**"Regarded as" coverage:**

- ➤ An individual can meet the definition of disability if an **employment action was taken because of an actual or perceived impairment** (e.g., refusal to hire, demotion, placement on involuntary leave, termination, exclusion for failure to meet a qualification standard, harassment, or denial of any other term, condition, or privilege of employment).
- ➤ "Regarded as" coverage under the ADAAA no longer requires that an impairment be substantially limiting, or that the employer perceives the impairment to be substantially limiting.
- ➤ The employer has a defense against a "regarded as" claim only when the impairment at issue is objectively *BOTH* transitory (lasting or expected to last six months or less) *AND* minor.
- ➤ A person is not able to bring a failure to accommodate claim *if* the individual is covered only under the "regarded as" definition of "disability."

*Note:   Although the amended ADA states that the definition of disability "shall be construed broadly" and "should not demand extensive analysis," some courts require specificity in the complaint explaining how an impairment substantially limits a major life activity or what facts indicate the challenged employment action was because of the impairment.  Beyond the initial pleading stage, some courts will require specific evidence to establish disability.*   For more information, consult the amended regulations and appendix, as well as explanatory publications, available at http://www.eeoc.gov/laws/types/disability_regulations.cfm.

# EXHIBIT B

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | |
|---|---|
| STEPHANIE M. RONEY, | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) CASE NUMBER: 5:18-cv-01482-CLS |
| | ) |
| CITY OF HUNTSVILLE, | ) |
| ALABAMA, | ) |
| | ) |
| **Defendant.** | ) |

## PLAINTIFF'S RESPONSES TO DEFENDANT CITY OF HUNTSVILLE, ALABAMA'S FIRST INTERROGATORIES

COMES NOW, Stephanie M. Roney, Plaintiff in the above-style case and responds to Defendant's First Interrogatories as follows:

### Interrogatories

1.     Identify each person Plaintiff expects to call as an expert witness at the trial of this case. For each expert identified, state (i) the qualifications of each such expert; (ii) the subject matter to which each such expert is expected to testify; (iii) the substance of facts and opinions to which each such expert is expected to testify; and (iv) a summary of the grounds for each expert opinion.

**RESPONSE:**  Plaintiff's counsel has not yet determined the identity of expert witnesses to be called at trial, but will seasonably supplement this response once said identities have been determined in accordance with the Federal Rules of Civil Procedure and any court scheduling order entered in this case.

2.     Identify each person whom Plaintiff has employed, retained, or otherwise engaged to investigate the allegations and/or claims made by her in the original and amended complaints and/or the damages she allegedly sustained.

22.    State whether Plaintiff has been a party to any bankruptcy proceeding in the last five years. If so, identify (i) the style and case number of the bankruptcy proceeding and the name of the court where the bankruptcy proceeding was commenced; and (ii) the status or disposition of the bankruptcy proceeding.

**RESPONSE:**    Yes.
U.S. Bankruptcy Court Northern District of Alabama (Decatur)
In Re: Stephanie Roney
14-81790-CRJ13
Discharged

23.    State whether Plaintiff is a member of or maintains an account with any social networking website, including, but not limited to, Facebook, Twitter, Instagram, Snapchat, Path, Vine, MySpace, Friendster, BlackPlanet, LinkedIn, and/or Blogster. If so, identify (i) each social networking website for which plaintiff is a member or maintains an account; and (ii) Plaintiff's login information for each social networking website, including user name and/or password(s).

**RESPONSE:**    Plaintiff objects to this interrogatory on the grounds that the information sought (a) is irrelevant and immaterial to the issues in this lawsuit; (b) would not be admissible at trial; and (c) is not reasonably calculated to lead to the discovery of admissible evidence. Plaintiff objects to this interrogatory on the grounds that it is not reasonably limited as to time and scope. Without waiving this objection, Plaintiff uses Facebook.

Respectfully submitted this the 13th day of November, 2019.


/s/ Rebekah Keith McKinney
Rebekah Keith McKinney (ASB-3137-T64J)
Philip M. DeFatta (ASB-9307-R7F)
*Attorneys for Plaintiff*
Watson McKinney, LLP
200 Clinton Avenue, West, Suite 110

18

Huntsville, Alabama 35801
(256) 536-7423 telephone
(256) 536-2689 fax
mckinney@watsonmckinney.com
defatta@watsonmckinney.com

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this the 13th day of November, 2019, I served a copy of foregoing upon the following by electronic service or by placing a copy of same in the United States mail, postage prepaid and properly addressed:

David J. Canupp, Esq.
J. Bradley Emmens, Esq.
Lanier, Ford, Shave & Payne, PC
2101 W. Clinton Avenue, Ste. 102
P.O. Box 2087
Huntsville, AL   35804

<div align="right">

/s/ Rebekah Keith McKinney
Rebekah Keith McKinney

</div>

Case 14-81790-CRJ13    Doc 80    Filed 12/18/19    Entered 12/18/19 07:49:33    Desc Main
Document      Page 45 of 46

## **VERIFICATION**

I, Stephanie Roney, certify that the foregoing is correct to the best of my knowledge.

_Stephanie Roney_
Stephanie Roney

STATE OF ALABAMA )
)
COUNTY OF MADISON )

    I, the undersigned, a Notary Public in and for said County in said State, hereby certify that Stephanie Roney, whose name is signed to the foregoing instrument, and who is known to me, acknowledged before me on this day that, being informed of the contents of the instrument, she executed the same voluntarily on the day the same bears date.

Witness my hand this 13th day of November, 2019.

_Anusa Willcts_
Notary Public
My Commission Expires: 10/17/2023

20